Order Entered.

Patrick M. Flatley
United States Bankruptcy Judge
Dated: Monday, March 31, 2008 1:00:50 PM

# THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| DAVID LYNN GRIMES and, | ) | |
| LINDA PERRY GRIMES, | ) | |
| | ) | |
| Debtors. | ) | Case No 06-7 |
| ——————————————— | ) | |
| | ) | |
| DAVID LYNN GRIMES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 07-57 |
| | ) | |
| FIRST-CITIZENS BANK & TRUST | ) | |
| COMPANY, TIMOTHY PENNINGTON, | ) | |
| and TIMOTHY McCLUNG, | ) | |
| | ) | |
| Defendants. | ) | |
| ——————————————— | ) | |

## MEMORANDUM OPINION

David Lynn Grimes (the "Debtor") filed a state court complaint against First-Citizens Bank & Trust Company ("First Citizens"), Timothy Pennington, and Timothy McClung (collectively, the "Defendants"). The state court complaint alleges a negligence cause of action based on, *inter alia*, First Citizens's unauthorized withdrawal of money from the Debtor's bank account. As a result of First Citizens's alleged negligence, the Debtor contends that he suffers from humiliation, embarrassment, and emotional distress.

The Defendants removed the state court action to this court on June 26, 2007. The Debtor now

1

argues that the state court action is a personal injury tort, and that the bankruptcy court lacks jurisdiction over the case under the proscription set forth in 28 U.S.C. § 157(b)(5).

## I. BACKGROUND

The Debtor is the principal of three corporate entities, Clearwater Timber Resources, LLC, ("Clearwater"), Deer Creek Management, LLC, ("Deer Creek"), and Independent Transport, Inc. All three entities borrowed money from First Citizens, and the Debtor signed commercial guaranty loans in excess of $1.4 million. With regard to these loans, the Debtor alleges that First Citizens provided financial advice to him upon which he relied to his detriment, and that First Citizens lent money based on the value of the collateral and not the ability to repay the loans.

In an attempt to assist the Debtor in obtaining additional financing for his business entities, First Citizens arranged for a meeting between the Debtor and the West Virginia Economic Development Authority ("WVEDA") in June 2005. During this meeting, the Debtor contends that the WVEDA encouraged the Debtor to seek bankruptcy protection for his business entities, and that, following the bankruptcy filings, it would grant a loan to sustain the businesses.

As a result of that meeting, the Debtor filed Chapter 11 bankruptcy petitions for both Clearwater and Deer Creek on August 18, 2005. After filing the bankruptcies, however, WVEDA declined to extend any credit to those businesses, and both cases were converted to Chapter 7 on April 24, 2007. Each case was designated a "no asset" case. Both were closed on August 23, 2007.

The Debtor contends that, before the Chapter 11 bankruptcy filings of Clearwater and Deer Creek, First Citizens, under the directions of McClung and Pennington, withdrew money from his personal checking accounts without his authorization. As a result, the Debtor's account became overdrawn, and First Citizens charged him with insufficient funds fees and other miscellaneous fees in excess of $29,000. The Debtor also alleges that First Citizens refused to cash checks and cashier's checks for employees of the Debtor's businesses. According to the Debtor's complaint, McClung "had no regrets or remorse as to the [Debtor's] problems," and Pennington "told other individuals that he hoped the [Debtor's] businesses failed."

The Debtor filed his individual Chapter 13 bankruptcy on January 9, 2006, which was converted

2

to a Chapter 7 case on January 31, 2007. The Debtor received a discharge on May 30, 2007, but the case is still open pending administration of estate assets.

## II. DISCUSSION

First Citizens contends that this court has subject matter jurisdiction over the Debtor's state court complaint, and that the proceeding is "core" within the meaning of 11 U.S.C. § 157(b)(2). The Debtor asserts that his complaint must be tried in the federal district court – not the bankruptcy court – on the basis that the complaint alleges a personal injury tort within the meaning of § 157(b)(5).

### A. Personal Injury Tort Claims

Neither party disputes that federal jurisdiction exists over the Debtor's state court complaint under 28 U.S.C. § 1334. That section grants the federal district courts exclusive jurisdiction over all bankruptcy cases, and "all the property, wherever located, of the debtor as of the commencement of the case, and property of the estate." § 1334(a), (e). District courts also have "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to a case under title 11." § 1334(b). This grant of jurisdiction has been referred from the district court to the bankruptcy court by General Orders of the District Court for the Northen District of West Virginia dated December 23, 1982 and August 24, 1984. *See* 11 U.S.C. § 157(a).

However, a bankruptcy court does not have the ability to exercise jurisdiction over all types of bankruptcy proceedings. An important reservation prohibits the bankruptcy court from adjudicating personal injury tort and wrongful death claims:

> The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.

28 U.S.C. § 157(b)(5).

Thus, to the extent that the Debtor's cause of action against First Citizens is a "personal injury tort" claim, the case must be tried in the district court given the objection by the Debtor to the cause of action being tried in the bankruptcy court.

Cases delineating the scope of "personal injury tort" have generally fallen within one of three

3

categories. First, some courts have adopted a narrow view of the term, which would require that the complaining party actually suffer a physical bodily injury. *Massey Energy Co. v. West Virginia Consumers for Justice*, 351 B.R. 348, 351 (E.D. Va. 2006) (finding that a claim for defamation did not fall within the purview of a personal injury tort); *In re Atron Inc. of Michigan*, 172 B.R. 541, 545 (Bankr. W.D. Mich. 1994) (finding that a wrongful discharge claim is not a personal injury tort within the scope of § 157). Second, some court have taken a more expansive view of the term to include any injury that invades a personal right. *Thomas v. Adams (In re Gary Brew Enterprises, LTD.)*, 198 B.R. 616, 620 (Bankr. S.D. Cal. 1996) (finding that the scope of "personal injury tort" in § 157 encompasses civil rights actions). The third approach adopts a more moderate view that looks to whether the complaint falls within the purview of a personal injury tort under the expansive view, but retains bankruptcy court jurisdiction over the claim if it has the "earmarks of a financial, business or property tort claim, or a contract claim." *Stranz v. Ice Cream Liquidation, Inc. (In re Ice Cream Liquidation, Inc.)*, 281 B.R. 154, 161 (Bankr. D. Conn. 2002).

The legislative history to 11 U.S.C. § 157(b)(5) is not particularly enlightening. Representative Kastenmeier, however, stated that it was only a "narrow category of cases" to which § 157(b)(5) would apply. 98th Cong. 2d Sess. 130 Cong. Rec. H 7471 (June 29, 1984). Indeed, the bankruptcy court retains jurisdiction over many different types of tort claims, such as determinations of fraud or wilful and malicious injury under 11 U.S.C. § 523(a). To eliminate the risk that financial, business, or property tort claims could escape the jurisdiction of the bankruptcy court, the court specifically rejects an overly expansive view of what constitutes a "personal injury tort."

Regarding the remaining two prevalent interpretations of "personal injury tort," neither interpretation helps the Debtor. No allegation exists in the complaint that the Debtor suffered a specific bodily injury. The complaint only contains one count for negligence. The alleged facts supporting that cause of action include: (1) First Citizens's giving of financial advice upon which the Debtor detrimentally relied; (2) First Citizens's approval of loans based on the value of the underlying collateral and not the Debtor's (or his business entities') ability to repay those loans; (3) making unauthorized withdraws from his checking account; and (4) inducing the Debtor to deal with the WVEDA, which resulted in his bankruptcy filings.

4

According to the Debtor's complaint, the Defendants' actions resulted in his "humiliation, embarrassment and emotional distress." No stand alone cause of action was alleged for intentional infliction of emotional distress. Viewing the Debtor's complaint as a whole, the Debtor's cause of action is more akin to a financial, business, or property tort claim than a personal injury tort claim. The Defendants are not ones that have entered an involuntary association with the Debtor as is the case in more traditional personal injury tort claims such as automobile accidents. *See In re Poole Funeral Chapel, Inc.*, 63 B.R. 527, 530 (Bankr. N.D. Ala. 1986) (distinguishing between voluntary and involuntary associations). In this court's view, the allegations in the complaint simply do not fall within the exception to bankruptcy court jurisdiction in § 157(b)(5).

**B. Core and Non-Core Proceedings**

Concluding that the bankruptcy court has jurisdiction to adjudicate the Debtor's cause of action against First Citizens, the court must make the further determination of whether the cause of action is "core" or "non-core."

Section 157 of title 28 distinguishes between those proceedings that are "core" and "non-core." Section 157(b)(2) contains a non-exclusive list of proceedings that are "core." In general terms, "core proceedings depend on the Bankruptcy Code for their existence and are those matters that either 'arise in' or 'arise under' the Bankruptcy Code." *Mich. Empl. Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Raido Co.)*, 930 F.2d 1132, 1144 (6th Cir. 1991). Controversies "arise in" the bankruptcy when they "have no existence outside of the bankruptcy." *United States Trustee v. Gryphon at the Stone Mansion, Inc.*, 166 F.3d 552, 555 (3d Cir. 1999). Claims "arise under" the Bankruptcy Code if the claims "clearly invoke substantive rights created by bankruptcy law." *Glinka v. Federal Plastics Mfg., Ltd. (In re Housecraft Indus. USA, Inc.)*, 310 F.3d 64, 70 (2d Cir. 2002). In both types of cases, the bankruptcy court may make final determinations of fact and conclusions of law. 28 U.S.C. § 157(b)(1).

"Non-core" matters are those which may otherwise be brought in a different forum, but which are "related to" a bankruptcy case. *Dunmore v. United States*, 358 F.3d 1107, 1114-5 (9th Cir. 2004). In "non-core" cases, the bankruptcy court submits proposed findings of fact and conclusions of law to the

district court, and "any final order of judgment shall be entered by the district judge. . . ." 28 U.S.C. § 157(c)(1). By the consent of the parties, the bankruptcy court may make final determinations of fact and conclusions of law in "non-core" matters. § 157(c)(2).

In *Valley Historic Ltd. P'ship v. Bank of N.Y.*, 486 F.3d 831, 836 (4th Cir. 2007), the Fourth Circuit adopted the same test for determining "related to" jurisdiction that was adopted by the Third Circuit in *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir. 1984). Under *Pacor*, "'the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.'" *Valley Historic Ltd. P'ship*, 486 F.3d at 836 (citations omitted). Accordingly, "'[a]n action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) and [it] in any way impacts upon the handling and administration of the bankruptcy estate.'" *Id.* (citation omitted). As stated by the Supreme Court, "[p]roceedings 'related to' the bankruptcy include (1) causes of action owned by the debtor which become property of the estate pursuant to 11 U.S.C. § 541, and (2) suits between third parties which have an effect on the bankruptcy estate." *Celotex Corp. v. Edwards*, 514 U.S. 308, n.5 (1995).

Here, the Debtor's complaint asserts claims based on prepetition events grounded in state law. The Debtor contends that the Defendants loaned him funds based on the value of the collateral securing the loan instead of his ability to repay the obligations and gave him financial advice upon which he detrimentally relied. He accuses First Citizens of making pre-petition, unauthorized withdraws from his checking account, and inducing the Debtor to deal with the WVEDA, which ultimately resulted in his decision to file bankruptcy. Each of these allegations is based on pre-petition activity, and, therefore, could not have "arisen within" the Debtor's bankruptcy case. *See Valley Historic Litd. P'ship*, 486 F.3d at 836 ("It seems self-evident that a claim, like the Debtor's breach of contract claim, that predates the filing of the Chapter 11 case cannot be said to have arisen within that case, and whether it caused the bankruptcy is immaterial."). The Debtor's claims against the Defendants would have each existed absent the bankruptcy, and, therefore, do not "arise under" the Bankruptcy Code. *Id.* ("[T]he Debtor's breach of contract claim and tortious interference claim would have existence outside of the bankruptcy . . . .").

6

Because the Debtor's complaint neither "arises in" nor "arises under" the Bankruptcy Code, it is not a traditional "core" matter. Absent consent of the parties, the court will not issue final orders and judgments.

Both parties agree that the cause of action asserted in the Debtor's complaint arose pre-petition, and that the cause of action is property of the Debtor's bankruptcy estate. 11 U.S.C. § 541(a) (stating that all legal and equitable interest of the debtor in property as of the commencement of the case is property of the estate); *Polis v. Getaways, Inc. (In re Polis)*, 217 F.3d 899, 902 (7th Cir. 2000) ("Legal claims are assets whether or not they are assignable, especially when they are claims for money . . . ."). Any recovery on the cause of action will benefit the Debtor's creditors by increasing the amount available for distribution. Matters which will affect the amount of property available for distribution or the allocation of property among creditors are "related to" the bankruptcy. *In re Xonics, Inc.*, 813 F.2d 127, 131 (7th Cir. 1987); *see also Trustee for the Estate of O'Sullivan's Fuel Oil Co., Inc., v. The Connecticut National Bank (In re Germain)*, 988 F.2d 1323, 1327 (2nd Cir. 1993) (lender liability action is a non-core, "related to" proceeding where it only serves to augment the estate but has no impact on the allowance of a creditor's claim); *Broadway Ownership Associates v. Banque Nationale de Paris (In re 1567 Broadway Ownership Associates)*, 97 Civ. 2089 (RWS), 1997 U.S. Dist. LEXIS 14357 at *15-16 (S.D.N.Y. September 19, 1997) (same).

Because the Debtor's claims are "related to" the Debtor's bankruptcy case, and because no party has articulated any other reason as to why the court should treat the Debtor's allegations as a "core" proceedings, the court finds that this proceeding is "non-core," and, absent consent of the parties, the court will only enter proposed findings of facts and conclusions of law for the district court.

## C. Standing

Both the Debtor and the Defendants agree that the cause of action is property of the estate pursuant to 11 U.S.C. § 541(a). So long as the cause of action is property of the estate, only the Debtor's Chapter 7 trustee has standing to pursue it. The court will give the Debtor 30 days to add his Chapter 7 trustee as a party defendant, or else the case will be dismissed.

### III. CONCLUSION

Based on the foregoing, the court has jurisdiction to consider the cause of action asserted by the

7

Debtor; however, because it is a non-core matter, unless the parties consent to entry of final orders and judgments by the bankruptcy court, the court will submit proposed findings of fact and conclusions of law to the District Court for review.

    The court will enter a separate order pursuant to Fed. R. Bankr. P. 9021.